Move now to our final case of the morning. This is Appeal 22-3278, United States v. Eunice D. Salley. And Ms. Ramay, we'll again turn to you for argument on behalf of the appellant. Thank you, Your Honor. Good afternoon, now, Your Honors, and may it please the Court, Counsel, Colleen Ramay, on behalf of the defendant appellant in this case. The decision to proceed without counsel must be knowing, voluntary, and intelligent. There's always a presumption against this waiver, and courts are directed to specifically spell out the dangers of proceeding pro se. That did not happen in this case. Particularly when that doesn't happen, we look at four factors to consider whether or not the decision to proceed pro se was made knowingly, involuntarily, and intelligently. We look to the court's formal inquiry into the waiver. We look to other evidence in the record, the defendant's background and experience, and the context in which the choice was made. In this case, there were many hearings, and I could not find a formal discussion with the defendant about this decision. It was, there was some discussion, certainly some discussion here. The courts didn't, neither the district court, or the district judge, nor the magistrate judge, specifically spelled out the dangers of proceeding pro se, aside from it would be a lot easier for you if you had an attorney. I mean, the district judge basically begged her. Yeah, begged her to get an attorney, or to say yes. Sure. I think at one point, the judge said, all you need to do is say yes. Yes, yes. But there wasn't, and so certainly encouraged, yes, I would absolutely agree that he encouraged her multiple times to get an attorney. There wasn't really this discussion as, you know, the bench book has all of these ideas of things that the do you really understand what the consequences could be? Do you understand what you're facing? Do you understand the penalties? In this case, the defendant actually, like, is in a pretty unusual situation of when you look at her background, while she has a conviction for a traffic violation and got, I think, probation, she had some really serious charges lodged against her, like murder, that was dismissed, or, you know, she beat all of the, any of the other charges that she had against her. And so, unlike, you know, that's one of the factors that we look at and say, oh, well, maybe, you know, she did have an appreciation for the seriousness of what she was facing. Do we know Ms. Ramee in those situations whether she was in sovereign citizen mode or not? That I have no idea. No, that is not in the case. Absolutely, she was presenting these sovereign citizen arguments. And so, I certainly understand the court's, you know, challenge with that. The, she did, however, like, in February of 2020 say, yes, I, you know, I understand the court has jurisdiction. And then she sort of just stopped participating. The, you know, she really went back and forth. She expressed a desire for counsel, but there were several times where she said, yes, I'd like counsel, but I don't trust this guy. Like, she didn't trust Mr. Herman, the standby counsel from the defender's office. And that was really the option she was given, was, you know, him or, you know, then, or you can hire your own attorney, which I'm not sure she could afford, but she did express at some point, you know, she couldn't find an attorney from, while she was incarcerated in pretrial detention. You know, sometimes in our case law, metaphors work, sometimes they don't. The metaphor that is often raised in Verretta is the razor's edge. Sure. That the district court is, could have a problem if they did either thing. I take it your argument, Ms. Ramay, is the problem that Judge Dowd, for Judge Dowd here, was a lack of a formal hearing. Is that, is that, because if he, if he doesn't recognize her right to counsel, he's stepping on that. If he forces a lawyer down her throat, that's a problem as well. So he's got to juggle this. Right. And, and yes, I would, I would agree with that, Judge Brennan. He's, there, there wasn't really this inquiry into it. And, and I recognize that the case law says that there is not a text. You know, there's not a specific colloquy that we have to have. And, and there are situations where a formal hearing is not required. I think in this case, it would have really solidified this decision, especially based on how many times she sort of went back and forth. She was, it wasn't exactly unequivocal. She looked at, you know, she, she expressed a desire and then she kept asking the court to represent her. I've seen a lot of sovereign citizen stuff and I, that's the first time I've seen that. Um, so it, there was a lot of confusion and it just, I think it, I, I couldn't say that this was an unequivocal affirmative and, and knowing. And that's, I think really the, the crux of this is that there, there just didn't seem to be a lot in the record to show what, that she was making this intelligent decision. She was certainly intrepid. She didn't speak during the entire trial as far as I, we could see in the transcript. Uh, there wasn't one instance when the federal defender did speak up and say she needs the exhibits back in her cell. Other than that though, the transcript just says she, uh. She did not participate. Yeah. Yeah. And then it seems like it, you know, then as the government pointed out at the sentencing, she ultimately decided, yeah, no, actually I do want him to represent me. Um, and I don't know what was going on in her mind. Um, I don't, I don't pretend to know if that was all of a sudden the full consequences. She, she understood the full consequences of those decisions or not. Which is different because she was incarcerated up until that point. Yeah. Yeah. But now she was facing a lot of prison time after conviction, I suppose. So. Um, if there are no other questions, I'll reserve the remainder of my time. Very good. Thank you, Ms. Ramey. Thank you. Um, Ms. Cook, we'll now move to you for argument on behalf of the government. Your Honors, this is a case where the district court bent over backwards, as Judge Lee said, basically begged the defendant to make the correct, the best, her, the choice that was in her best interest and accept counsel. But it recognized that it could not, to use Judge Brennan's phrase, force a lawyer down her throat. And it had to respect her invocation, which was unequivocal and steadfast, to represent herself. Um, as to whether the request was unequivocal, I'd point to two very clear points where the defendant unequivocally requested to represent herself. The first is the first time she is before Magistrate Judge Valdez and she introduces herself. The, Mr. Meyer from the Federal Defender Program gets up and says, I've spoken with the defendant and she does not want the assistance of our office or any other attorney. And I'm sure Your Honors have looked at the transcript. This is not a defendant who is shy about jumping in when she believes someone has said something incorrect. She repeatedly jumped in during that hearing to say, no, that's not right. That's not what I want. You've forgotten this fact. She doesn't say anything about not wanting an attorney and then proceeds to engage in mostly sovereign citizen rhetoric. Although when she, when a point is salient to her, she's able to have a totally normal conversation. For example, when she wanted to be released from custody and not subject to the strip search policy. There, the sovereign citizen rhetoric drops away and she's conversing with a magistrate judge like a typical litigant. And indeed, the very next day when there's a detention hearing, Judge Valdez says, you're engaging in sovereign citizen tactics. Your beliefs don't allow you to acknowledge the jurisdiction of the court. That's part of why I think you're a flight risk and you need to remain in custody unless you can post bond and get a third party guarantor, or third party custodian, excuse me, because you're engaging in these tactics that suggest you're attempting to obstruct the proceedings. But to move to the other point at which she unequivocally asserts her right to counsel, it's the first time she's in front of the district court. And the district court says, based on what you said to the magistrate judge, I understand that you want to represent yourself. And she says, that's correct. And I think the judge sort of realizes, I should be a little more explicit than that. You want to represent yourself? To which she says, yes, your honor, correct. And I think that's sort of open and shut on that. That's exactly the sort of unequivocal response that this court has requested and encouraged defendant, excuse me, urged district court judges to push for. And in cases like Abbott, this court has said, when you have something that is as straightforward as that, that is unequivocal. I want to quickly address the times at which the defendant referenced some sort of desire to seek counsel. And I think it's important to point out that at no point did defendant say that she wanted the district court to appoint her a lawyer. What she requested twice was to be released from custody so that she purported to have an interest in seeking a lawyer. And both times, the district court said, no, I'm not going to release you from custody. You can seek a lawyer from prison. You can use letters. You can call. But factually, I'm making a factual finding, that you can get a lawyer in custody. But also, and every time, without fail, I mean, every hearing, this judge is reminding her that if she's indigent, he'll appoint the federal defender. She just needs to fill out the form. And he'll appoint the defender. For many of the conversations, there's a defender in the room. From the beginning, really through the end, there's an attorney. And the district court says, this is an excellent attorney. Two different attorneys. These are excellent, experienced attorneys. Take them. And eventually, to Judge Lee's point, the district court sort of gives up on requiring her to prove she's indigent and says, just say yes, and I'll appoint this great lawyer for you. I mean, it would have been nice if the district court would have reminded her of the potential consequences of being convicted in this case, right? Maximum of 20 years, right? And kind of went and told her about, kind of talked a bit more about the consequences so that the record would be more, I guess, might be more complete with regard to a knowing waiver of the right. I agree, Judge Lee. But I think it's important to point out that in this case, she was informed of the charges and the maximum penalties because Magistrate Judge Valdez had the attorney who was present read her that. And indeed, when she refused copies of the indictment repeatedly, the judge said, fine, I'm going to have counsel for the government read you every line, every word of this indictment. And they did. Right at the hearing. Read it right into the record to her so that there could be no question that she understood because, as the district court said repeatedly, she was engaging in obstructive tactics. And I heard my friend on the other side say, well, at some point, she just stopped. And I think that it's not that she just stopped. Her behavior always stayed right on the line of being allowed to continue to represent herself while being as obstructive as possible. I think it bears pointing out that at one point, she stopped coming to hearings. She refused to be transported. And after that happened several times, I think it was four hearings, the district court said, I'm appointing standby counsel for you. And if you continue to refuse to participate at all, if you will not show up, then I will appoint him as full counsel. You have to show up. Immediately, she begins showing up. Physically, one time she refused to put on the headphones when she was at the MCC. And the transcript, the marshal's saying, I don't understand what's going on. We can hear you. The headphones are working. She physically won't pick them up and put them on. They start having hearings again in person. And she'll appear, but she will not speak. And the judge says, OK, you have your right to stand mute. That's well established in this court's cases, cases like Jones that was recently decided by this court. You can just stand there as a form of sort of silent protest or put the government to its case if you want. But if you're disruptive, which the court thought was a real possibility, this will be like Brock. This will be like Banabe. And if you become obstreperous and you disrupt the proceedings, I'm going to, standby counsel is going to have to step in. And she stays on the side of the line. She says, OK, I'm going to not participate, but I will physically appear, and I will not be obstructive. Same thing happens again at sentencing, where she refuses to be transported again. And after a couple of tries, she refuses to respond to the direct questions from the district judge at a hearing about her sentencing. And finally, the district judge says, I'm not going to make the marshals. I'm not going to authorize force like I did at trial. If you don't come, we're going to sentence you in absentia, essentially, and you'll be deemed to have waived your presence at sentencing, which she's entitled to do. And once it becomes clear sentencing is going to happen, she says, oh, OK, and she comes to court to do her sentencing. And indeed, at that point, even after her efforts to represent herself at sentencing when it comes to the PSR are unsuccessful, then she hands things over to standby counsel and says, I'd like him to speak for me on the 3553A. And counsel says, yeah, we had conversations. I was prepared to step in if that had happened. So I don't think there's any way, looking at this record as a whole, that this court can see anything other than an unequivocal waiver, a persistent desire, and an informed desire to represent herself, and a bench that worked incredibly hard to allow her to pursue the constitutional rights that she wanted to avail herself of. If this court has no further questions, I'd ask that you affirm. Thank you, Ms. Cook. Ms. Ramay, rebuttal. If this court has any further questions for me. The only question would be, is there anything in the record early on about any assessment or evaluation for not guilty by reason of mental disease or defect? I saw nothing of the sort. And she, again, wasn't represented by counsel even at the beginning. And so that would not have been, that's typically brought up by counsel. Thank you, Ms. Ramay. Thank you, Ms. Cook. The case is taken under advisement. Thank you. That will complete our hearings for the day, and the court will be in recess until tomorrow.